O
JS-6

# United States District Court
# Central District of California

ASHLEY JORDAN WALLENS, an
individual,

     Plaintiff,

  v.

MILLIMAN FINANCIAL RISK
MANAGEMENT LLC, et al.,

     Defendants.

Case No. 2:20-cv-02439-ODW (MRW)

**ORDER GRANTING
DEFENDANTS' MOTION TO
COMPEL ARBITRATION [17] AND
DENYING DEFENDANTS'
MOTIONS TO DISMISS [15] [16]**

## I. INTRODUCTION

  Plaintiff Ashley Jordan Wallens ("Wallens") brings this action against his former employer, its wholly owned subsidiary, and its employee, based on alleged sexual harassment, retaliation, and wrongful termination. (Declaration of Eve Tilley-Coulson, Ex. A ("Compl."), ECF No. 1-2.) Milliman Financial Risk Management LLC ("Milliman-FRM"); Milliman, Inc. ("Milliman"); and Suzanne Norman ("Norman") (collectively, "Defendants"), move to compel Wallens's claims to arbitration ("Motion"). (Mot. Compel Arbitration ("Mot."), ECF No. 17.) For the

following reasons, the Court **GRANTS** Defendants' Motion, and **DENIES** Defendants' Motions to Dismiss.[1]

## II.   BACKGROUND

Wallens is an Ivy League graduate who has worked for many prestigious financial institutions.  (Compl. ¶ 14.)  In March 2018, Wallens accepted a role with Defendants to work remotely from his home in Los Angeles, California, in the financial risk management practice of Milliman-FRM.  (*See id.* ¶¶ 15, 27.)  According to Wallens, he attended a business trip on August 24, 2018, where his direct supervisor, Norman, made unwanted sexual advances on him.  (*Id.* ¶¶ 18–25.) Wallens rebuffed her advances, and afterward faced retaliation.  (*Id.* ¶¶ 25–27.)

On August 30, 2018, Norman emailed Wallens to inform him that licenses necessary for his position were expired, and that he would have to retake the required exam by October 5, 2018.  (*Id.* ¶ 27.)  Wallens contends Norman was aware of the status of his licenses when he was hired in March 2018, and that her email feigning ignorance was merely pretextual.  (*See id.*)  Later, on September 20, 2018, Norman emailed Wallens and the human resources department ("Human Resources") accusing Wallens of misappropriating company finances.  (*Id.* ¶ 28.)  Wallens alleges Norman's accusation was fraudulent, as Norman knew that Wallens did not misappropriate funds.  (*Id.* ¶ 29.)

On October 4, 2018, Norman placed Wallens on a performance improvement plan ("PIP") on the grounds that Wallens provided false information during his onboarding process concerning the status of his licenses.  (*Id.* ¶ 31.)  Norman initially provided Wallens with forty-five days to "improve his performance."  (*Id.*)  On October 7, 2018, Wallens informed Human Resources about Norman's unwanted sexual advances and how she retaliated by placing him on a PIP after he turned her down.  (*Id.* ¶ 33.)  Based on Wallens's report, Milliman-FRM launched an internal

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

investigation and removed Norman as Wallens's direct supervisor.   (*Id.* ¶ 34.) Milliman-FRM also disseminated arbitration agreements to all of its employees for their review and required them to sign the agreements as a condition of employment. (*See id.*)

Wallens claims that he "worked extremely hard to satisfy" the terms of the PIP; however, Defendants refused to return him to good standing.  (*Id.* ¶¶ 37–41.)  Wallens alleges that while he was working to complete the terms of the PIP, Defendants forced him to agree to arbitrate all claims related to his employment with Defendants.  (*Id.* ¶ 41;  *see also* Decl. of Victoria Gleeson ¶¶ 7, 10, Ex. A ("Agreement"), ECF No. 17–3.)   The Agreement provides that all claims that Wallens has against Milliman-FRM, its parent company, or any of its employees will be brought in arbitration.  (*See generally* Agreement.)   Milliman-FRM and Wallens are the only parties to the Agreement.  (*See* Agreement 1, 3.)  Wallens asserts, on information and belief, that Defendants "dangled the prospect" of returning to good standing in order to force him to agree to arbitration.  (Compl. ¶ 42.)  Subsequently, on December 6, 2018, Defendants terminated Wallens for "being untruthful on his resume" because his licenses were expired.  (Compl. ¶ 49 (internal quotation marks omitted).)

On February 11, 2020, Wallens initiated this action in the Superior Court of California, County of Los Angeles, and Defendants removed the matter to this Court. (Compl.; Removal, ECF No. 1.)  In the Complaint, Wallens asserts ten claims related to his employment with Defendants: (1) sexual harassment, (2) sexual discrimination, (3) failure to prevent discrimination, (4) retaliation, (5) whistleblower retaliation, (6) fraud, (7) wrongful discharge in violation of public policy, (8) negligent infliction of emotional distress, (9) intentional infliction of emotional distress, and (10) unfair business practices.  (Compl. ¶¶ 51–132.)

On May 15, 2020, Milliman-FRM and Milliman moved to dismiss Wallens's sixth cause of action for fraud.  (Milliman Mot. Dismiss, ECF No. 15.)  That same day, Norman moved to dismiss the claims against her due to lack of personal

jurisdiction.  (Norman's Mot. Dismiss, ECF No. 16.)  Subsequently, Defendants filed the present motion to compel arbitration.  (Mot.)

### III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs contract disputes relating to arbitration where they affect interstate commerce.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995).  The FAA establishes "a liberal federal policy favoring arbitration agreements" and requires district courts to compel arbitration on all claims within the scope of the agreement.  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hos. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In deciding whether to compel arbitration, a court's inquiry is generally limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). However, in light of the FAA's "savings clause," every arbitration agreement is subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

### IV.   DISCUSSION

Defendants move to compel arbitration under the FAA because Wallens signed the Agreement, which is governed by the FAA and covers all of his claims in this action.  (*See generally* Mot.)  Defendants also request an order staying the entire action pending completion of arbitration.  (*Id.* at 24.)  Wallens contends that the Agreement is not valid and Milliman-FRM's suspended corporate status bars it from bringing the present Motion.  (Opp'n, ECF No. 18.)

**A.      Existence of a Valid Arbitration Agreement and Scope**

The Court first addresses the "gateway" issues and finds that the Agreement is valid and covers Wallens's claims in this case.

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  In California "[a]n essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001), *as modified* (Sept. 12, 2001).  "[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 842 (2014).

Defendants argue that a valid arbitration agreement exists and submit evidence that Wallens signed the Agreement, which requires that he arbitrate all claims related to his employment.  (*See* Mot. 9–10; Agreement 1.)  Wallens contends the Agreement is invalid because: (1) Defendants unduly influenced him to sign the Agreement, and (2) there was a unilateral mistake of fact regarding the scope of the Agreement. (Opp'n 7–10.)  The Court addresses each in turn.

*1.      Undue Influence*

First, Wallens argues that Milliman-FRM procured the Agreement by undue influence because: (1) the Agreement was disseminated around the time "the bulk of [Defendants'] tortious action[s] occurred"; and (2) Milliman-FRM led Wallens to believe that he would not be terminated if he completed the PIP.  (*Id.* at 7–8.) Defendants contend that they were entitled to require that Wallens sign the Agreement as a condition of his employment, and that his subsequent termination does not establish that he was subject to undue influence when he signed the Agreement. (Reply 13–15, ECF No. 21.)  Defendants are correct.

"A court reviewing a claim of undue influence looks at whether there was voluntary assent to the arbitration provision." *Richards v. Stanley*, No. CIV-S-04-

2564 DFL DAD, 2005 WL 8176778, at *4 (E.D. Cal. June 20, 2005) (citing *Ford v. Shearson Lehman/Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1027–29 (1986)). California law recognizes three different types of undue influence: "(1) use of a confidential or fiduciary relationship to obtain an unfair advantage; (2) taking unfair advantage of another's weakness of mind; or (3) taking a grossly oppressive and unfair advantage of another's necessities or distress." *Id.* (citing Cal. Civ. Code § 1575). "A contract obtained through undue influence is voidable by the party who was unduly influenced." *Id.* (citing Cal. Civ. Code § 1689).

It is clear from Wallens's allegations that only the latter two types of undue influence—taking advantage of another's weakness of mind or distress—are at issue.[2] (*See generally* Compl; Opp'n 7–8.) To state a claim of undue influence under one of these theories requires the claimant to establish two elements: (1) undue susceptibility, and (2) excessive pressure by the other party. *Richards*, 2005 WL 8176778, at *4 (citing *Odorizzi v. Bloom Sch. Dist.*, 246 Cal. App. 2d 123, 131 (1966)); *see also Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1139–40 (N.D. Cal. 1999) (explaining that, under California law, when there is no confidential relationship between the contracting parties, the burden of proving "undue influence" is on the claimant). In determining a party's susceptibility, courts may consider factors such as the claimant's age, physical condition, and emotional anguish. *See Odorizzi*, 246 Cal. App. 2d at 131. "The presence of any one or more of these factors may support—but does not necessitate—a finding of undue susceptibility." *Olam*, 68 F. Supp. 2d at 1141. Moreover, "as a general rule, age, physical condition, and suffering of pain furnish no basis for setting aside a [contract] if the party seeking rescission exercised a free and untrammeled mind." *Id.* (brackets and internal quotation marks omitted).

---

[2] "The first type of undue influence arises where a fiduciary relationship exists between the parties." *Richards*, 2005 WL 8176778, at *4. Although Wallens also seeks to rely on this type of undue influence, his allegations and arguments make clear that it is not applicable in this case as he does not allege that Defendants were acting in any fiduciary capacity. (*See* Opp'n 7; *see generally* Compl.)

Wallens argues that "the undue influence exercised by Defendants is clear by looking at the timeline" of events. (Opp'n 8.) That timeline begins in August 2018, when Wallens allegedly rebuffed his manager's sexual advances. (Compl. ¶¶ 18–25.) Shortly thereafter, on October 4, 2018, Wallens was placed on a PIP, "on which his job was dependent." (Opp'n 8.) Then, on November 2, 2018, Milliman-FRM disseminated the mutual dispute resolution agreement to all of its employees and "signing the [A]greement was a condition to [Wallens] keeping his job." (*Id.*) Based on this timeline, Wallens argues that "Defendants conspired to let [Wallens] *believe* that he *might* keep his job, so as to secure his signature on [the Agreement]," and this establishes that Defendants exerted undue influence over him. (*Id.*)

As Defendants correctly point out, Wallens's arguments fail to establish that he was unduly influenced to sign the Agreement. (Reply 13–15.) Neither Wallens's Complaint nor his Opposition addresses the first element necessary to prove his claim—that he was unduly susceptible, i.e., in an "unduly weakened" condition at the time he signed the agreement due to his age, physical condition, or emotional anguish. *See, e.g., Olam*, 68 F. Supp. 2d at 1141. "Sickness, senility, or old-age" are generally required to demonstrate undue susceptibility, *Cassidy v. Tenorio*, 856 F.2d 1412, 1417 (9th Cir. 1988), and Wallens has not alleged that any of these conditions apply to him. (*See generally* Compl.) Moreover, turning to the Complaint, Wallens's allegations contradict any claim that he was in an unduly weakened condition when he signed the Agreement. Specifically, Wallens alleges that around the time he signed the Agreement he was "work[ing] extremely hard to satisfy the requirements" of his PIP. (Compl. ¶ 41.) Thus, Wallens's allegations suggest that he signed the Agreement with "a free and untrammeled mind" which defeats a claim of undue influence. *See Olam*, 68 F. Supp. 2d at 1141.

In sum, Wallens does not put forth any argument to establish that he was unduly susceptible, and thus capable of being subjected to undue influence. Therefore, the

1   Court finds that Wallens fails to meet his burden to prove that he signed the
2   Agreement under Defendants' undue influence.

3          *2. Unilateral Mistake*

4          Next, Wallens contends that the Agreement is not valid because it was procured
5   by a unilateral mistake of fact. (Opp'n 9.)  Specifically, Wallens contends that the
6   Agreement's language is ambiguous; and as a result he was mistaken about the scope
7   of the Agreement, which applies claims that arose both before and after Wallens
8   signed the Agreement. (*Id.* at 10 (explaining that "Wallens did not believe that he was
9   signing away his right to sue for actions that took place *prior* to execution of the
10  [A]greement.").)  Defendants assert that the Agreement is not ambiguous, and that its
11  expansive language clearly "encompasses claims that arose both before and after"
12  Wallens executed the Agreement.  (Reply 15–16.)

13         "California law allows rescission of contract for a unilateral mistake only when
14  the unilateral mistake is known to the other contracting party and is encouraged or
15  fostered by that party." *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1673–74
16  (1996) (internal quotation marks omitted).  A plaintiff is bound by the provisions of an
17  arbitration agreement regardless of whether he read the agreement or was aware of the
18  scope of the arbitration clause when he signed the document.  *Id.*; *see also Carlile v.
19  Russ Berrie & Co.*, No. SACV 08-0887 AG (RNBx), 2008 WL 4534281, at *2
20  (C.D. Cal. Oct. 6, 2008).  "No law requires that parties dealing at arm's length have a
21  duty to explain to each other the terms of a written contract, particularly where . . . the
22  language of the contract expressly and plainly provides for the arbitration of disputes
23  arising out of the contractual relationship." *Brookwood*, 45 Cal. App. 4th at 1674.
24  "Reliance on an alleged misrepresentation . . . is not reasonable when plaintiff could
25  have ascertained the truth through the exercise of reasonable diligence." *Id.*  The
26  party alleging the mistake bears the burden of proving that the mistake occurred. *See,
27  e.g.*, *Meyer v. Benko*, 55 Cal. App. 3d 937, 944 (1976).

28

Wallens argues that the Agreement is invalid due to a unilateral mistake because he "did not believe that he was signing away his right to sue for actions that took place *prior* to execution of the [A]greement." (*See* Opp'n 10.)  His argument lacks merit.  First, Wallens's conclusory assertion that Defendants knew about and fostered the mistake does not satisfy his burden to prove those facts.  (*See id.* at 11.)  Additionally, Wallens concedes that he signed the agreement (Compl. ¶ 41); thus he is "bound by its terms even if [he] was unaware of the scope or existence of the arbitration agreement."  *See Carlile*, 2008 WL 4534281, at *2.

Significantly, Milliman-FRM provided Wallens thirty days to consider whether to sign to Agreement.  (Mot. 20.)  Thus, he had ample time to review and consider its terms.  Milliman-FRM was under no obligation to explain the terms of the Agreement to Wallens.  Wallens's failure to exercise due diligence by contacting outside counsel or advisors *before* he executed the agreement does not create a claim for unilateral mistake of fact.  *See Carlile*, 2008 WL 4534281, at *2 (explaining that a plaintiff is bound to arbitrate "even if . . . [h]e did not consider the legal consequences of signing [the arbitration agreement]." (internal quotation marks omitted)).  Therefore, the Court finds that Wallens fails to demonstrate the Agreement is invalid as a result of a unilateral mistake.  As neither of Wallens's contentions undermine the validity of the Agreement, the Court finds it is valid and enforceable.

### 3.    Scope of the Agreement

The Court next addresses the second "gateway issue" and finds that Wallens's claims fall within the scope of the Agreement.  *See Brennan*, 796 F.3d at 1130.  "To require arbitration, [Plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause."  *Haraway v. E! Ent. Television, LLC*, No. CV 13-0628 FMO (MRWx), 2014 WL 12588479, at *2 (C.D. Cal. Apr. 7, 2014) (brackets omitted) (quoting *Simula, Inc. v. Autolive, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)).  This "standard for demonstrating arbitrability is not high . . . and any doubts concerning the scope of arbitrable issues should be resolved in favor of

1   arbitration.  *Id.* (first quoting *Simula*, 175 F.3d at 721; and then quoting *Moses H.*

2   *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

3         Defendants contend that Wallens agreed to arbitrate any claims related to his

4   employment.  (Mot. 16.)  Wallens argues that the Agreement does not cover claims

5   that existed before he signed the Agreement.  (Opp'n 9–10.)  Defendants are correct.

6         Here, the Agreement provides: "[A]ny controversy, dispute or claim that could

7   otherwise be raised in court ('Covered Claim') . . . shall be settled exclusively by

8   binding arbitration rather than in court.  It is the parties' intent that all claims between

9   them covered by this Agreement are to be resolved through binding arbitration."

10  (Agreement 1.)  Despite Wallens's contention that the Agreement does not cover

11  claims that pre-exist the Agreement, the broad language of the parties' Agreement

12  proves otherwise.  *See, e.g.*, *Simula*, 175 F.3d at 720–21 (explaining that arbitration

13  agreements containing "any and all disputes" must be interpreted liberally).

14  Additionally, courts have held that agreements with broad arbitration provisions may

15  apply to pre-existing claims.  *See, e.g.*, *Mohammad v. T-Mobile USA, Inc.*, No. 2:18-

16  CV-00405-KJM-DB, 2018 WL 6249910, at *7 (E.D. Cal. Nov. 29, 2018) (finding that

17  language stating the arbitration clause covers "any and all claims or disputes" is

18  sufficiently broad to apply retroactively to pre-existing claims).  Thus, the Court finds

19  that the Agreement covers claims that existed prior to Wallens signing the Agreement.

20        Additionally, the Court finds that Wallens's claims touch matters covered by

21  the Agreement, which provides:

22        Covered Claims include, but are not limited to, claims for
      wages and other compensation, breach of contract,
23      misappropriation of trade secrets or unfair competition,
      violation of public policy, wrongful termination; tort claims;
24      claims for unlawful retaliation, discrimination and/or
      harassment; and claims for violation of any federal, state, or
25      other government law, statute, regulation, or ordinance . . . .
26

27  (Agreement 1.)  Here, Wallens's Complaint alleges several claims based on

28  Defendants' alleged sexual harassment and retaliation.  (*See generally* Compl.)

Wallens's claims in this dispute are clearly covered under the scope of the Agreement, which requires arbitration of "any controversy, dispute, or claim" that Wallens has against Milliman-FRM, its parents, or employees based on his employment with the company. (Agreement 1.) Accordingly, the Court finds that the Agreement is valid and enforceable and Wallens's claims all fall within its scope.

**B.    Milliman-FRM May Compel Arbitration**

Having determined that the Agreement is valid and that it covers the present dispute, the Court next addresses Wallens's argument that Milliman-FRM (the other party to the Agreement) is unable to compel arbitration because the California Franchise Tax Board ("FTB") suspended the company from doing business in California. (Opp'n 4–7.) Wallens contends that as a consequence of Milliman-FRM's suspended corporate status: (1) the company "is precluded from bringing or [d]efending an action in any [c]ourt in the State of California"; and (2) any contracts executed while Milliman-FRM's status was FTB suspended are voidable. (*Id.* at 5–7.) In response, Milliman-FRM argues: (1) the company has obtained revivor and is now in good standing with the FTB, thus the Court can and should rule on its Motion; and (2) the company was in good standing with the FTB at the time the Agreement was executed, so it is not voidable. (Reply 10–11; Decl. of Craig Spangler ("Spangler Decl.") ¶¶ 7–11, ECF No. 24-2; Req. for Judicial Notice ¶¶ 1–3, Ex. B, ECF No. 24-3.)[3]  Milliman-FRM is correct.

Under California Revenue and Taxation Code section 23301, "corporate powers, rights and privileges . . . may be suspended" if a company fails to pay its taxes. Cal. Rev. & Tax Code § 23301. And "[w]hile suspended, a corporation may neither prosecute nor defend an action." *Anyang Xinyi Elec. Glass Co. v. B&F Int'l (USA) Inc.*, No. CV 15-00862-BRO (AJWx), 2016 WL 7435482, at *4 (C.D. Cal. Aug. 4, 2016). Moreover, "contracts made by an entity while that entity's corporate

---

[3] Defendants' status with the California Secretary of State is subject to judicial notice as it is a matter of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Accordingly, the Court **GRANTS** Defendants' Request for Judicial Notice. (ECF No. 22.)

rights are suspended or forfeited pursuant to [section] 23301 . . . are voidable." *Ruffin Road Venture Lot IV v. Travelers Prop. Cas. Co. of Am.*, No. 10-CV-11-JM (WVG), 2011 WL 13356060, at *3 (S.D. Cal. May 10, 2011) (citing Cal. Rev. & Tax Code § 23304.1(a)). "However, corporate powers in these instances are only temporarily suspended, not dissolved." *Anyang Xinyi*, 2016 WL 7435482, at *4. Thus, "upon revival of its corporate powers, . . . the party may proceed with the prosecution or defense of the action." *Id.* (brackets omitted).

"[C]orporate revivor retroactively validates actions in the course of litigation such as . . . making and opposing" motions. *Id.* (quoting *Ctr. For Self-Improvement & Cmty. Dev. v. Lennar Corp*, 173 Cal. App. 4th 1543, 1553 (2009)). "The California Supreme Court has explained that, because the purpose of section 23301 is to 'put pressure on the delinquent corporation to pay its taxes,' that purpose is satisfied when the delinquencies have been remedied." *Id.* (quoting *Peacock Hill Ass'n v. Peacock Lagoon Constr. Co.*, 8 Cal. 3d 369, 371 (1972)).

Here, the parties agree that Milliman-FRM's corporate status was suspended when it filed its Motion on May 15, 2020. However, Milliman-FRM explains in its Reply that as of June 8, 2020, the FTB has lifted its suspension. (Reply 10–11; Spangler Decl. ¶ 12, Ex. A ("FTB Certificate of Revivor") (stating that Milliman-FRM "has been relieved of suspension or forfeiture and is now in good standing with the [FTB]").) Given that Milliman-FRM's corporate status has been revived, Wallens's argument that the Court should strike the Motion is moot. *See, e.g.*, *Anyang*, 2016 WL 7435482 at *4. Accordingly, the Court finds that Milliman-FRM Motion is cured of any procedural defects caused by its suspended corporate status, and it may move to compel arbitration under the terms of the Agreement.

The Court also finds that the Agreement is not voidable. The facts before the Court demonstrate that the Agreement was executed on November 9, 2018, almost one month before the FTB suspended Milliman-FRM's corporate status in December 2018. (*See* Agreement 3; Spangler Decl. ¶ 7.) Because Milliman-FRM

was in good standing with the FTB at the time the Agreement was executed, it is not voidable by Wallens.  *See Ruffin Road*, 2011 WL 13356060, at *3; Cal. Rev. & Tax Code § 23304.1(a).

**C.   Milliman & Norman May Enforce the Agreement**

Milliman and Norman also join Milliman-FRM's Motion as nonsignatories to the Agreement and seek to compel Wallens's claims to arbitration.  (*See* Mot. 7 n.2, 15.)  Wallens does not oppose Milliman and Norman's attempt to compel arbitration based on their status as nonsignatories to the Agreement.  (*See generally* Opp'n.)  The Court first addresses Norman's motion to dismiss based on lack of personal jurisdiction.  (Norman's Mot. Dismiss 7.)

*1. Personal Jurisdiction Over Norman*

Norman joins the Motion only in the alternative to her motion to dismiss in which she argues that as a threshold matter the Court lacks personal jurisdiction.  (*See* Mot. 7 n.2; Norman's Mot. Dismiss.)   Wallens opposes and argues that it is reasonable to exercise personal jurisdiction over Norman because her alleged tortious actions were directed toward California.  (Opp'n Norman's Mot. Dismiss 4, ECF No. 20.)  On this issue, the Court agrees with Wallens.

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  "The plaintiff bears the burden of proving that each defendant has sufficient minimum contacts with the forum state that warrant the court's exercise of personal jurisdiction."  *VBConversions LLC v. Now Sols., Inc.*, No. CV 13-00853 RSWL (ANx), 2013 WL 2370723, at *2 (C.D. Cal. May 30, 2013) "Depending on the nature and scope of the defendant's contacts with the forum, jurisdiction may be general or specific to a cause of action."  *Id.*

In cases where a defendant's contacts are insufficient to demonstrate "continuous and systematic" contacts, "more limited specific jurisdiction may be

found where a cause of action arises out of or is related to the defendant's activities in the forum state." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–73 (1985)).  In the Ninth Circuit, courts apply a three-part test to determine whether there is specific jurisdiction over a defendant: "(1) the defendant either purposefully directed its activities at the forum or purposefully availed itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities; and (3) the court's exercise of personal jurisdiction over the defendant is reasonable.  *Id.* (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).

"Absent formal discovery or an evidentiary hearing, the plaintiff need establish only a prima facie showing that personal jurisdiction exists . . . ."  *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 961 (C.D. Cal. 2005).  "[T]he uncontroverted allegations of the complaint must be taken as true, and the court will draw all reasonable inferences in [the] plaintiff's favor."  *Alexis v. Rogers*, No. 15CV691-CAB-BLM, 2016 WL 11707630, at \*2 (S.D. Cal. Feb. 26, 2016).

The case of *Alexis v. Rogers* is instructive.  *See id.*  In *Alexis*, the court held that a plaintiff alleged sufficient "virtual contacts" directed at California (e.g., emails, texts, phone calls) from the defendant (her employer) to establish personal jurisdiction over the defendant.  *Id.* at \*12.  The court found that those "virtual contacts [were] deliberate actions on the part of [the defendant] purposefully directed at California."  *Id.* at \*9.  Moreover, the court found that the plaintiff's claims arose out of the defendant's contacts with California, as the defendants' "intentional acts were expressly directed at [p]laintiff in California . . . in furtherance of the employment relationship."  *Id.* at \*10.  Accordingly, the court held that it was not only foreseeable, but it was reasonable for the court to establish personal jurisdiction over the defendant employer based on his virtual contacts with the plaintiff who worked remotely from California.  *Id.* at \*12.

Viewing the allegations in the light most favorable to Wallens, just as in *Alexis*, it is not only foreseeable, but it is reasonable that the Court may exercise personal jurisdiction over Norman.  *See id.* at *4–7.  Wallens worked remotely from California, and, over the course of his employment, Norman engaged in direct virtual contact with Wallens as his supervisor.  (*See generally* Compl.)  Moreover, Norman's virtual contacts were directed toward California, and for the purpose of Wallens performing work for the benefit of Defendants and under Norman's direct supervision.  (*See generally id.*)  Additionally, several of Wallens's claims against Norman arise out of Norman's contact with California, e.g., the claims for fraud and negligent and intentional infliction of emotional distress.  (*Id.* ¶¶ 83–102, 109–119.)  Finally, California has a strong interest in protecting employees, like Wallens, that perform work in California; it would be easier for Wallens to litigate his claims in this state; and Norman fails to propose an alternate forum.  Therefore, as in *Alexis*, the Court finds that Wallens has made a prima facie showing of jurisdictional facts to withstand Norman's challenge to personal jurisdiction.  *See, e.g.*, *Alexis*, 2016 WL 11707630, at *12.

As the Court finds Norman's challenge to personal jurisdiction fails, the Court **DENIES** Norman's Motion to Dismiss.  (ECF No. 16.)

### 2.   *Nonsignatories to the Agreement*

Turning to Norman's alternative request to enforce the arbitration agreement, Milliman and Norman may compel arbitration as nonsignatories because the claims against them are intertwined with those against Milliman-FRM.  *See Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 224 (2009) (explaining that nonsignatories can compel arbitration when claims are intertwined with arbitrable claims).  Here, Wallens's claims allege collusive behavior by Defendants, including sexual harassment and discrimination, retaliation, fraud, and wrongful termination—all based on his employment with Defendants.  (*See* Compl. ¶¶ 51–108.)  Thus, the claims against nonsignatories, Milliman and Norman, are undeniably related to and

inextricably intertwined with the contractual obligations of the Agreement that requires arbitration of all harassment, tort, and wrongful termination claims. (*See* Agreement 1.)  Therefore, the Court finds that Milliman and Norman may enforce the Agreement against Wallens under the doctrine of equitable estoppel.

**D.     Stay**

Having determined that Defendants may enforce the Agreement, the Court next addresses Defendants' request to stay this litigation pending completion arbitration. (Mot. 24.)  Under the FAA, if a federal district court determines that a suit is subject to an arbitration agreement, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  In the Ninth Circuit, district courts also have discretion to dismiss a party's complaint if an arbitration clause ensnares all of the party's claims. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that section three does not limit the court's authority to grant dismissal); *see also Azoulai v. La Porta*, No. CV 15-06083-MWF-PLA, 2016 WL 9045852, at *5 (C.D. Cal. Jan. 25, 2016) (dismissing action after compelling arbitration).

As previously discussed, the Agreement has a broad arbitration provision, which covers "any controversy, dispute or claim that could otherwise be raised in court" related to Wallens's employment with Defendants.  (Agreement 1.)  And Wallens's harassment, discrimination, retaliation, statutory, and other tort claims are expressly within the scope of the Agreement.  (*See id.*)  Accordingly, because the Agreement covers all of Wallens's claims, this action shall be **DISMISSED**.

///
///
///
///
///
///

16

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Compel Arbitration (ECF No. 17) and **DISMISSES** the case.   Milliman's and Milliman-FRM's Motion to Dismiss is **DENIED** as MOOT.  (ECF No. 15.)  Norman's Motion to Dismiss is **DENIED**.  (ECF No. 16.)  The Clerk of the Court shall close this case.


**IT IS SO ORDERED.**


December 28, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**